IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| PETER ROJAS,<br><br>    Plaintiff<br><br>    v.<br><br>LIEUTENANT NEWMAN, et al.,<br><br>    Defendants | Case No. 1:18-cv-371<br><br>UNITED STATES MAGISTRATE JUDGE<br>RICHARD A. LANZILLO<br><br>MEMORANDUM OPINION AND<br>ORDER |

I.     Introduction

Plaintiff Peter Rojas, an inmate formerly confined at the State Correctional Institution at Fayette (SCI-Fayette),[1] initiated this pro se civil rights action seeking monetary relief pursuant to 42 U.S.C. § 1983. In his Amended Complaint, Rojas asserts that four corrections officers at SCI-Fayette – Lieutenant Newman, Lieutenant Burton, Sergeant Richter, and Sergeant Poska – violated his constitutional rights as secured by the First and Eighth Amendments to the United States Constitution by subjecting him to retaliation, cruel and unusual punishment, and engaging in an unlawful conspiracy. ECF No. 14.

Defendants have filed a Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and an Appendix of Exhibits. ECF Nos. 38-41. Rojas has filed a Brief in Opposition, a Statement of Disputed Factual Issues, and a Declaration in Opposition. ECF No. 54-56. Having carefully reviewed the foregoing, the Court will grant Defendants' motion.

---

[1] Rojas has since been transferred to SCI-Forest.

1

II.   Procedural Background

In his original pleading, Rojas asserted a single cruel and unusual punishment claim based on two incidents that occurred while he was incarcerated at SCI-Fayette. ECF No. 7. Specifically, he alleged that each of the Defendants refused to provide him with a pillow while he was housed in the Restricted Housing Unit ("RHU") between April 2, 2016, and April 23, 2016, and that Sergeant Richter ignored his request to use the bathroom while he was working in the prison law library on April 17, 2016. *Id.* at 5.

On January 17, 2019, the undersigned issued a Report and Recommendation that Rojas' Complaint be dismissed as frivolous in accordance with 28 U.S.C. § 1915(e) because each of the incidents underlying his claim occurred more than two years prior to the commencement of this action. ECF No. 2 at 3 ("Plaintiff's pleading clearly reveals that each of the alleged constitutional violations occurred over two years before he initiated this action."). The Court also noted that, "[e]ven if Plaintiff's claims were timely, they [did] not rise to the level of a constitutional violation." *Id.* at 4-5. On February 22, 2019, United States District Judge Susan Paradise Baxter adopted the Report and Recommendation and dismissed this action. ECF No. 4.

On May 6, 2019, Rojas sought reconsideration of Judge Baxter's Order and requested leave to file an Amended Complaint. ECF Nos. 9-10. Rojas articulated that he had attempted to file his Complaint in a timely fashion but had been thwarted by circumstances beyond his control, suggesting that he might be entitled to equitable tolling. ECF No. 10 at 2. On May 30, 2019, Judge Baxter granted Rojas' motion, instructed the Clerk to reopen this action and docket Rojas' Amended Complaint [ECF No. 14], and referred the matter back to the undersigned for further proceedings. ECF No. 11. The parties later consented to the jurisdiction of the

undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

   III.   Factual Background

The substantive allegations in Rojas' amended pleading mirror those in his original Complaint. On or about April 1, 2016, Rojas was placed in the RHU for disciplinary reasons. ECF No. 14 ¶¶ 9-10; ECF No. 40 ¶ 4. Rojas was not initially provided with a pillow. ECF No. 14 ¶ 9; ECF No. 40 ¶ 5. Over the next several days, Rojas repeatedly requested a pillow, both verbally and in writing, but each Defendant allegedly refused to provide one. ECF No. 14 ¶ 10; ECF No. 55 ¶ 6.

On April 11, 2016, Rojas filed a grievance – Official Inmate Grievance 621280 – asserting that Defendants' continued denial of a pillow was causing him to experience neck pain. ECF No. 14 ¶¶ 10; ECF No. 40 ¶ 5. According to Rojas, Newman approached his cell on April 16, 2016, and offered to provide him with a pillow if Rojas would withdraw his grievance. ECF No. 55 ¶¶ 10-11. When Rojas refused, Newman left without providing a pillow. *Id.* ¶ 11. Four days later, Newman upheld Rojas' grievance and provided him with a pillow.[2] ECF No. 41-1 at 4; ECF No. 40 ¶ 8.

In the meantime, Rojas attended a scheduled session at the prison law library on April 17, 2016. ECF No. 40 ¶ 14; ECF No. 55 ¶ 13. According to Rojas, Defendants Richter and Poska refused to allow him to leave the law library to use the bathroom for a period of several hours, forcing him to urinate on himself. ECF No. 55 ¶¶ 14-18. Plaintiff suggests that this caused him

---

[2] Rojas' subsequent appeals of Grievance 621280 were denied because he had already received the relief that he requested. ECF No. 40 ¶¶ 11-13. Rojas received a final decision on August 16, 2016. *Id.* ¶ 13.

to experience excruciating bladder pain for several days. ECF No. 14 ¶ 19. Defendants deny that Rojas ever asked to use the bathroom on that occasion. ECF No. 41-2 at 3.

Based on this incident, Rojas filed Official Inmate Grievance 622263. Rojas' grievance was denied at each administrative level. ECF No. 40 ¶¶ 21-24.

IV.   Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden

of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

V.  Analysis

Rojas asserts four claims: a retaliation claim against Newman (Count 1); a retaliation claim against Burton (Count 2); a cruel and unusual punishment claim against Richter and Poska (Count 3); and a conspiracy claim against all Defendants (Count 4). Defendants, in response, assert that Rojas' claims are time-barred and that he has failed to state a claim. Each defense will be addressed in turn.

1.  Statute of limitations

The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose, which in Pennsylvania is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)); 42 Pa. Cons. Stat. § 5524(2). The incidents described in the Amended Complaint took place between April 2 and April 23, 2016. Because Rojas did not commence this action until

November 30, 2018, Defendants contend that any constitutional claim based on those incidents falls well outside of the statutory limitations period and must be dismissed.

Rojas responds that he originally mailed his Complaint in this action on March 28, 2018 – comfortably within the limitations period – but that factors outside of his control prevented his pleading from reaching the Court. In a sworn declaration, Rojas states that he was provided an incorrect address for the Western District of Pennsylvania's Clerk of Courts by the staff librarian at SCI-Forest and that his initial mailing "did not arrive at the court due to the faulty address given to Plaintiff by the Librarian." ECF No. 50 ¶¶ 21-22. He asserts that his mailing then got lost in the mail for several months, during which time he actively attempted to contact both the Court and the United States Postal Service to determine why his Complaint had not been filed. *Id.* ¶¶ 22-23. Based on these efforts, Rojas contends that he is entitled to equitable tolling.

There is no question that "Section 1983's statute of limitations is subject to tolling." *Zguro v. Johnson*, 2021 WL 1635850, at *2 (M.D. Pa. Apr. 27, 2021). For example, courts within the Third Circuit, including the Court of Appeals, have acknowledged that the statute of limitations can be equitably tolled "when the plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Zguru*, 2021 WL 1635850, at *2.[3] To avail himself of tolling, Rojas must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 751 (3d Cir. 2020) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The diligence prong "covers those affairs within the litigant's control" while the "extraordinary-circumstances prong . . . is meant to cover matters

---

[3] The Court of Appeals for the Third Circuit has also recognized that tolling may be appropriate "where a defendant actively misleads a plaintiff with respect to [his] cause of action" or where "the plaintiff asserts [his] claims in a timely manner but has done so in the wrong forum." *Kach v. Hose*, 589 F.3d 626, 643 (3d Cir. 2009) (citing *Lake v. Arnold*, 232 F.3d 360, 370 n. 9 (3d Cir. 2000)). Neither circumstance is presented here.

outside [his] control." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257 (2016). Because the two components "are distinct elements," the litigant seeking tolling "must satisfy both." *D.J.S.-W.*, 962 F.3d at 751.

Here, the Court concludes that Rojas has submitted ample evidence to support each of these prongs. In his sworn declaration, Rojas describes the numerous attempts he made to initiate this action. Rojas' declaration is corroborated by a cash slip indicating that he mailed an envelope to the Clerk of Courts of the Western District of Pennsylvania on March 28, 2018, a photocopy of that envelope bearing numerous stickers from the post office indicating that his parcel had been "returned to sender – not deliverable to addressee – unable to forward," and a letter that he sent to the Clerk of Courts on May 31, 2018, inquiring as to the status of his case. *See* ECF No. 10-2 at 1-2. The three "return to sender" stickers on the envelope are dated April 25, 2018, May 16, 2018, and June 4, 2018, suggesting that the package disappeared into the United States mail system for several months before finally being returned to Rojas on June 8, 2018. *Id.* None of this delay can be attributed to Rojas.

The record further reflects that Rojas mailed his Complaint for a second time on August 14, 2018, only a month after his original envelope was returned as undeliverable. *See* ECF No. 10-2 at 3. This second mailing is also corroborated by a cash slip bearing the date and the address of the United States Courthouse in Pittsburgh. *See* ECF No. 10-2 at 3. It is unclear what happened to this envelope. However, when Rojas inquired by letter dated October 17, 2018, as to the status of his case, he discovered that his mailing had again failed to reach the Court. *See* ECF No. 10-2 at 4. He responded by promptly sending a third copy of his Complaint on November 27, 2018. ECF No. 56 ¶ 11. This attempt was successful. *See* ECF No. 1.

7

Based on the foregoing, the Court concludes Rojas is entitled to equitable tolling. Rojas diligently and repeatedly attempted to assert his claims at the proper time, only to be thwarted by mailing issues beyond his control. As an inmate, Rojas had no opportunity to hand deliver his pleading to the courthouse; he was entirely reliant on prison officials to deliver his envelope to the postal service and, in turn, on the postal service to deliver his mail to the Clerk. When he failed to receive notification from the Court that either of his first two Complaints had been filed, Rojas proactively inquired as to the status of his case and took appropriate action to refile his pleading. *Holland*, 560 U.S. at 653 (noting that a petitioner need only show "reasonable diligence, not maximum feasible diligence"). In the absence of any evidence to the contrary, Rojas' submissions establish that he pursued his rights diligently in the face of an "extraordinary circumstance [that] stood in his way and prevented timely filing." *D.J.S.-W.*, 962 F.3d at 751. As such, the statute of limitations does not bar the Court from reviewing Rojas' claims on their merits.[4]

2. Retaliation

In Counts 1 and 2, Rojas asserts that Newman and Burton retaliated against him for filing his first grievance by refusing to provide him with a pillow. In order to establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v.*

---

[4] Equitable tolling is also appropriate "while an inmate exhausts his administrative remedies." *Jordan v. Murin*, 2019 WL 3997897, at *3 (W.D. Pa. July 25, 2019). *See also Pearson v. Sec'y Dep't of Corrs.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts his administrative remedies."). Although insufficient, on its own, to salvage the timeliness of Rojas' claims, this principle extended the statutory limitations period for his claims until August 1 and August 22, 2018, two years after each grievance appeal was denied.

8

*Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). To be actionable, the adverse action "need not be great" but "must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).

In the instant case, the record reflects that Rojas was forced to sleep without a pillow from April 1 to April 20, 2016. However, he did not engage in any protected activity until April 11, 2016, when he filed his first grievance. Because that grievance came <u>after</u> (and, indeed, in response to) the initial denial of a pillow, Rojas cannot sustain a retaliation claim for any deprivation which occurred between April 1 and April 11. *See, e.g.*, *Wilson v. Miller*, 2019 WL 825910, at *2 (W.D. Pa. Jan. 14, 2019) ("[T]he only protected conduct identified in the Complaint . . . occurred after . . . the allegedly adverse action taken by Miller. Even assuming . . . an adverse action, Plaintiff clearly cannot establish that Miller's comment was motivated by a constitutionally protected activity that had yet to occur.").

The only potentially adverse action that occurred after Rojas filed his grievance took place during his interaction with Newman on April 16, 2016. According to Rojas, Newman visited his cell with a pillow and a grievance withdrawal slip and offered to provide the pillow if Rojas withdrew his grievance.[5] When Rojas refused, Newman allegedly took the pillow and left. Four days later, Newman upheld Rojas' grievance and supplied him with a pillow.

Although this incident does not suffer from the causation problem described above, Rojas cannot establish that the denial of a pillow for three additional nights amounted to a

---

[5] Newman denies that this occurred. Because the Court concludes that the subsequent deprivation is *de minimis*, this factual dispute is not material.

9

constitutionally adverse action. To the contrary, courts have consistently held that similarly brief and minor deprivations of this nature would not deter a person of ordinary firmness from exercising his First Amendment rights. *See, e.g., Walker v. Mathis*, 665 Fed. Appx. 140, 143 (3d Cir. 2016) (concluding that inmate-plaintiff's two-day suspension from work without pay was insufficient to meet the adverse action prong of a retaliation claim); *McClenton v. Ryan*, 2021 WL 103642, at *6 (M.D. Pa. Jan. 12, 2021) ("demotion" to wiping tables for a few days was not an adverse action); *Turner v. Johnson*, 2020 WL 6323698, at *5 (D.N.J. Oct. 28, 2020) (allegation that two officers prevented inmate from showering for three days was not adverse action); *Smith v. City of New York*, 2017 WL 2172318, at *4 (S.D.N.Y. May 16, 2017) ("That [the defendant correction officer] allegedly threw out the [p]laintiff's food and bed linen is not a substantial enough [injury] to deter legitimate grievances against prison officers.") (internal quotation marks and citation omitted); *Lyons v. Wall*, 464 F. Supp. 2d 79, 84 (D.R.I. 2006) ("Minor inconveniences -such as sporadic cold showers - are entirely *de minimis*."). Because a handful of nights without a pillow is the type of *de minimis* inconvenience that cannot sustain a retaliation claim, summary judgment is appropriate.

    3.    Cruel and unusual punishment

Rojas next contends that Richter and Poska refused to allow him to visit a bathroom for several hours while he was using the law library on April 17, 2016. Rojas alleges that this violated his Eighth Amendment right to be free from cruel and unusual punishment.[6]

---

[6] Although he argues in his opposition brief that this action was retaliatory, *see* ECF No. 56 ¶¶ 36-37, Rojas did not allege a retaliation claim based on this incident in his Amended Complaint. *See* ECF No. 14 ¶¶ 25-26. It is axiomatic that "the complaint may not be amended by the briefs in opposition" to a dispositive motion. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal marks and citation omitted); *Bracken v. Cty. of Allegheny*, 2017 WL 5593451, at *2 (W.D. Pa. Nov. 21, 2017) ("A pleading may not be amended by a brief in opposition to a [dispositive] motion.").

In general, "the denial of access to the lavatory has been held to offend the Eighth Amendment only where it is unconscionably long or where it constitutes an ongoing feature of an inmate's confinement." *Cook v. Wetzel*, 2015 WL 2395390, at *4-5 (E.D. Pa. May 20, 2015) (citing *Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992)). Thus, "[t]emporary restrictions on bathroom use, even ones lasting several hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety." *Watson v. Graves*, 2017 WL 4533103, at *5-6 (E.D. Va. Oct. 6, 2017) (finding no constitutional violation where prisoner was routinely forced to wait up to two hours for a bathroom break) (quoting *Rouse v. Caruso*, 2011 WL 918327, at * (E.D. Mich. Feb. 18, 2011)). Indeed, "courts have continually found that a short period without access to a bathroom does not violate the Eighth Amendment; these cases range from a few minutes to up to eight hours without access to a bathroom." *Evans-Salter v. Wetzel*, 2020 WL 5819764, at *3 (M.D. Pa. Sept. 30, 2020) (collecting cases). *See also Cook*, 2015 WL 2395390, at *5 (no violation based on eight-hour bathroom deprivation despite allegation by inmates that holding their urine "caused . . . damage to their bladders"); *DePaola v. Ray*, 2013 WL 4451236 (W.D. Va. July 22, 2013) (no violation based on "the denial of bathroom privileges for just over five hours while being transported between prisons" despite plaintiff's allegation of "extreme, sharp bladder pain"); *Hernandez v. Battaglia*, 673 F.Supp.2d 673, 677 (N.D. Ill. 2009) (denial of bathroom break during 3–5 hour period of cell "shakedown" did not state Eighth Amendment claim); *Owens v. Padilla*, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim). The Court reaches the same conclusion here. As such, summary judgment is warranted.

4. Conspiracy

Rojas' final allegation is that Defendants engaged in a "conspiracy to interfere with civil rights" by "intentionally retaliating" against him and violating his rights. ECF No. 14 ¶¶ 27-28. To survive summary judgment on a conspiracy claim, a Section 1983 plaintiff must adduce evidence suggesting that two or more persons acting under color of state law conspired to deprive him of a constitutional right. *Laurensau v. Romarowics*, 528 Fed. Appx. 136, 140 (3d Cir. 2013). "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a conspiracy claim." *Tindell v. Beard*, 351 Fed. Appx. 591, 594 (3d Cir. 2009). Rather, the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Court of the State of New Jersey*, 588 F.3d 180, 184-85 (3d Cir. 2009).

Rojas has adduced no evidence in support of this claim. Although he attempts to infer concerted action from the fact that "the rest of the defendants" allegedly retaliated against him when he filed a grievance against any other Defendant, *see* ECF No. 56 ¶ 55, there is nothing in the record from which a reasonable factfinder might infer that Defendants formulated and executed an agreement to violate his constitutional rights. *Carey v. Johnson*, 2008 WL 724101, at *10 (W.D. Pa. Mar. 17, 2008). The law is clear: "bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to state a conspiracy claim." *Id.* (emphasis added). Such is the case here.

VI.   Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted. A separate judgment will follow.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

Dated:  June 11, 2021